COMMERCIAL MORTGAGE & FINANCE CO., Plaintiff-Appellant,

v.

CLERK OF THE CIRCUIT COURT, Walworth County, Sheila T. Reiff, and Cotswold Trading Company Limited, a Foreign Corporation, Defendants-Respondents.

Court of Appeals

*No. 03–3338. Submitted on briefs September 9, 2004.—Decided September 29, 2004.*

2004 WI App 204

(Also reported in 689 N.W.2d 74.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Karl F. Winkler, Esq.* of *Oliver, Close, Worden, Winkler & Greenwald* of Rockford, Illinois.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Charles H. Bohl, Barbara J. Janaszek,* and *James P. Denis III,* of *Whyte, Hirschboeck, Dudek, S.C.* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Commercial Mortgage & Finance Co. (Commercial) appeals from a trial court order granting a motion for judgment on the pleadings and dismissing Commercial's complaint against Sheila T. Reiff, the clerk of the Walworth County Circuit Court. Commercial contends that the clerk violated a mandatory, ministerial duty set out in Wis. Stat. § 806.10(1) (2001–02)[1] by failing to include the address of Commercial's judgment debtor, Linda Frykholm, when the clerk entered Commercial's judgment against Frykholm on the judgment docket.[2] Because the judgment submitted by Commercial did not provide Frykholm's address, the trial court ruled that the clerk did not have the duty to search for the address and to include it in the judgment docket. We uphold this ruling.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Wisconsin Stat. § 806.10(1) is entitled "Judgment and lien docket." In this opinion we refer to the docket as the "judgment docket."

¶ 2. We also address two of Commercial's alternative arguments. First, Commercial argues that the clerk was also obligated to enter the foreclosure judgment it had earlier obtained against Frykholm on the judgment docket. Second, Commercial challenges the trial court's disposition of the matter via the clerk's motion for judgment on the pleadings. Commercial contends that matters beyond the scope of the pleadings were introduced at the hearing on the motion, thus converting the motion to one of summary judgment which presented material issues of fact warranting a trial. We reject both of these alternative arguments. We affirm the order dismissing Commercial's complaint.

## BACKGROUND

¶ 3. Frykholm's criminal scam spawned this appeal. Before we set out the particular facts of this case, we quote from the Seventh Circuit Court of Appeals decision in *United States v. Frykholm*, 362 F.3d 413, 414–15 (7th Cir. 2004), *cert. denied*, 2004 WL 2071399 (Oct. 12, 2004), which speaks in colorful terms about Frykholm, a con artist who may not equal Victor Lustig,[3] but would give him a run for his money:

> Frykholm must have the tongue of an angel, though she has the morals of a fiend. She persuaded people to invest $15 million in a get-rich-quick scheme, even though the promises she made were transparently too good to be true (100% return in a month) and she had no means to back her promises. Her only relevant credential was a 1994 conviction for theft and forgery, which she did not tout; her "business address" was a mail drop; routine inquiry would have disclosed that the corporations though which she purported to do business did not exist and that Illinois securities offi-

---

[3] Victor Lustig successfully sold the Eiffel Tower—twice! FLOYD MILLER, THE MAN WHO SOLD THE EIFFEL TOWER (1961).

cials had entered a stop order against her promotions. Her persuasiveness was augmented, however, by the staple ingredient of any Ponzi scheme: the first generation of investors was handsomely rewarded with money being raised from the next generation, and these ecstatic clients became her avid promoters. Yet collapse was inevitable. The system works only while each new generation of investors puts in at least twice as much as the last, and exponential growth cannot last: after a few doublings there aren't enough suckers left in the whole world. When Frykholm's scam imploded she had net receipts of about $10 million (having taken in $15 million and paid out $5 million), of which prosecutors have been able to locate some $4 million; the rest either was devoted to living the high life or has been hidden someplace from which Frykholm hopes to retrieve it after her release . . . . Forfeiture of all assets traceable to the scam's proceeds is part of Frykholm's sentence, and the United States plans to use these assets to make restitution to victims . . . .

¶ 4. With that backdrop, we turn to the extensive, but undisputed, facts of this case. On March 2, 2004, Commercial commenced a foreclosure action against Frykholm's Walworth County property.[4] The complaint alleged that Frykholm was in arrears on a debt owed to Commercial in the amount of $411,386.30. Frykholm did not contest the action and a judgment of foreclosure was entered on June 13, 1994. The ensuing sheriff's sale did not produce proceeds sufficient to satisfy the debt. Therefore, the circuit court entered a deficiency judgment against Frykholm on October 31, 1994, in the amount of $105,836.99. The judgment, prepared by Commercial's attorneys, did not recite Frykholm's address.

---

[4] The foreclosure action also named Frykholm's husband as a defendant.

¶ 5. The following day, November 1, 1994, Reiff, the Walworth county clerk of courts, docketed the judgment against Frykholm, indicating all of the information required by WIS. STAT. § 806.10(1) except Frykholm's address.

¶ 6. Thereafter, in January 1999, Frykholm acquired other real estate in Walworth County using a fictitious name. Later, in November 1999, she executed a mortgage on this property to Cotswold Trading Company, Ltd. (Cotswold) in the amount of $2,200,000.[5] In March 2000, Cotswold commenced a foreclosure action against this property resulting in a foreclosure judgment against Frykholm in August 2000. Cotswold purchased the property at a foreclosure sale in November 2000.

¶ 7. During this same period of time, the United States government was pursuing a criminal action for wire fraud and money laundering against Frykholm, who pled guilty to the charges on August 31, 2000. As a result, a preliminary order of forfeiture in favor of the government was filed on September 1, 2000. This order preceded Cotswold's purchase of the property at fore-

---

[5] Cotswold Trading Company, Ltd. was one of Frykholm's victims, having made an initial investment of $100,000 which was to be doubled and repaid within thirty-five days. Frykholm failed to make this payment. Proving that a sucker is born every minute, Cotswold invested another $1 million after Frykholm promised to pay $2 million in thirteen days. When this payment was not made, Cotswold "reinvested" the promised but unpaid $2 million in exchange for Frykholm's promise to pay $4 million within fifteen banking days. *United States v. Frykholm*, 362 F.3d 413, 415 (7th Cir. 2004), *cert. denied*, 2004 WL 2071399 (Oct. 12, 2004). Frykholm also failed to make this payment. *Id.*

closure sale.[6] Commercial, which later joined the forfeiture action as a party, challenged the forfeiture, asserting a priority claim to the property based on its 1994 deficiency judgment against Frykholm and the docketing of the judgment on the judgment docket. The government opposed Commercial's challenge, contending that the docketing of the judgment did not create an enforceable lien because the docket entry did not include Frykholm's address. The federal district court ruled against Commercial and forfeited the property to the government subject to Cotswold's priority interest by virtue of its foreclosure judgment.

¶ 8. On November 26, 2002, Commercial served a Notice of Claim upon Walworth County alleging that the clerk of circuit court had failed to perform her statutory duty pursuant to WIS. STAT. § 806.10(1) by failing to include Frykholm's address when entering Commercial's deficiency judgment on the judgment docket. Walworth County denied the claim. In response, Commercial commenced the instant action on May 12, 2003, against the clerk. As with the Notice of Claim, Commercial's complaint alleged that the clerk had failed to perform her ministerial statutory duty by failing to include Frykholm's address in the judgment docket.[7] The clerk moved for judgment on the pleadings

[6] Title to all forfeitable assets vests in the United States as soon as criminal proceeds are invested; a judgment of forfeiture confirms that this has occurred. *See* 21 U.S.C. § 853(a) (2004). However, the statute protects the interests of a bona fide purchaser for value who acquires an interest in such property between the date of the forfeiture and the date of the judgment and who did not have reasonable cause to believe that the property was subject to forfeiture. *Frykholm*, 362 F.3d at 416.

[7] Commercial's complaint also alleged claims against Cotswold. Those matters are not before us on this appeal.

seeking dismissal of Commercial's complaint. In support, the clerk argued that she was not required under the statute to include the judgment debtor's address in the judgment docket since the judgment submitted by Commercial did not provide that information. The circuit court agreed and dismissed Commercial's complaint.[8] Commercial appeals.

## DISCUSSION

### *The Clerk's Duty Under Wis. Stat. § 806.10(1)*

■■■

¶ 9. The first issue we address is whether Wis. Stat. § 806.10(1) creates a ministerial duty on the part of the clerk of circuit court to include the address of the judgment creditor on the judgment docket when the judgment does not provide that information. We review this issue under the de novo standard of review on two levels. First, a motion for judgment on the pleadings presents a question of law, a matter we review de novo. *Freedom from Religion Found., Inc. v. Thompson*, 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991). Second, the issue presents a question of statutory construction, which also presents a question of law. *State v. Morford*, 2004 WI 5, ¶ 19, 268 Wis. 2d 300, 674 N.W.2d 349. Although we owe no deference to the trial court's ruling involving questions of law, we nonetheless benefit from the court's analysis of such issues. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

---

[8] Because of some concern about the wording of the dismissal order, the clerk sought to vacate the order. The circuit court granted this request and conducted a further hearing on the matter. At this hearing, the court confirmed its previous ruling and entered the order of dismissal that is the subject of this appeal.

¶ 10. A judgment on the pleadings is essentially a summary judgment minus affidavits and other supporting documents. Thus, a motion for judgment on the pleadings contemplates the first two steps of summary judgment methodology. We first examine the complaint to determine whether a claim has been stated. If so, we then turn to the responsive pleading to determine whether material factual issues exist. *Schuster v. Altenberg*, 144 Wis. 2d 223, 228, 424 N.W.2d 159 (1988).

¶ 11. Wisconsin Stat. § 806.10 sets out the clerk's duties when docketing a judgment. It states in relevant part:

> **(1)** At the time of entry of a judgment directing in whole or in part the payment of money . . . *the clerk of circuit court shall enter judgment in the judgment and lien docket . . . including all of the following:*
>
> (a) The full name *and place of residence of each judgment debtor . . . . If the judgment or judgment and lien docket fails to give the place of residence of the judgment debtor . . . the validity of the judgment is not affected thereby, but the judgment creditor may at any time file with the clerk of circuit court an affidavit stating, on knowledge or information and belief, the information. The clerk of circuit court shall thereupon enter the facts according to the affidavit in the judgment and lien docket, noting the date and time of the entry.*
>
> (b) The name of the judgment creditor, in like manner.
>
> (c) The name of the attorney for the judgment creditor, if stated in the record.
>
> (d) The date of the entry of the judgment.
>
> (e) The day and time of entry.

855

(f) The amount of the debt, damages or other sum of money recovered, with the costs.

(Emphasis added.)

¶ 12. Since the statute uses the mandatory word "shall," Commercial argues that the clerk has a ministerial and mandatory duty to enter all of the information set out in the statutory subsections in the judgment docket, including the address of the judgment creditor as prescribed by Wis. Stat. § 806.10(1)(a). Commercial argues that the clerk is liable even though the judgment it tendered to the clerk failed to provide Frykholm's address. Despite its own failing, Commercial argues that the clerk could have easily complied with the statute since Frykholm's address was noted some nine times in the record of the foreclosure case.

¶ 13. Although Commercial does not directly cite to the law of governmental immunity, we presume its effort to find a ministerial duty in Wis. Stat. § 806.10(1) is based upon the exception to such immunity for "the performance of ministerial duties imposed by law." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 24, 253 Wis. 2d 323, 646 N.W.2d 314. *See also* Wis. Stat. § 893.80(4) (immunizing governmental "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.").

¶ 14. We reject Commercial's argument for three separate reasons. First, in construing Wis. Stat. § 806.10(1), Commercial relies on selective portions of the statute without giving due consideration to other relevant portions. "[C]ourts must look not at a single, isolated sentence or portion of a sentence." *Highland Manor Assocs. v. Bast*, 2003 WI 152, ¶ 9, 268 Wis. 2d 1, 672 N.W.2d 709 (citation omitted). Instead, we must

look to the "relevant language of the entire statute." *Id.* "[A] statutory provision must be read in the context of the whole statute to avoid an unreasonable or absurd interpretation. Statutes relating to the same subject matter should be read together and harmonized when possible." *Id.*

■

¶ 15. If we limited our consideration of the statute to just the words mandating that the clerk include the judgment debtor's address in the judgment docket, we perhaps could conclude that the clerk's duty is mandatory even if the judgment did not provide that information. But the statute goes on to address the very scenario presented by this case—the failure of the judgment creditor to include the address of the judgment debtor in the judgment. In that situation, the judgment creditor may correct the omission by filing an affidavit with the clerk providing the missing information. The clerk, in turn, must then enter that information on the judgment docket. Construing the statute as a whole and recognizing the entire statutory scheme as it pertains to the address of the judgment debtor, we conclude that it is the judgment creditor who has the responsibility to provide the clerk with the judgment debtor's address. The creditor may do this by initially providing such information in the judgment or by later providing the information via the affidavit procedure.

¶ 16. Second, our interpretation of the statute conforms to the usual and accepted procedure relating to the preparation and submission of judgments. Typically, the prevailing party prepares the judgment. WISCONSIN STAT. § 806.06(4) states, "A judgment may be rendered and entered at the instance of any party either before or after perfection." WISCONSIN STAT. § 806.01(1)(b) states, "Each judgment shall specify the relief granted or other deter-

857

mination of the action, and the name *and place of residence of each party to the action.*" (Emphasis added.) If the prevailing party fails to include this requisite information in the judgment, the clerk should not be burdened to do that party's work, much less be held liable to that party for failing to do so.

¶ 17. Third, WIS. STAT. § 806.10(3) requires that the clerk enter a judgment on the judgment docket "at the proper time." In *South Milwaukee Savings Bank v. Barrett*, 2000 WI 48, ¶ 27, 234 Wis. 2d 733, 611 N.W.2d 448, our supreme court held that the phrase "at the proper time" "means docketing [the judgment] *immediately* upon entry of judgment.*" (Emphasis added.) While the facts of this case suggest that the clerk might have been able to immediately docket the judgment because Frykholm's address was recited in the record, such might not be so in another case under different facts. For instance, if the record reveals different addresses or no address for the judgment creditor, the time required for the clerk to sort out such uncertainty or to conduct a search for the current address of the judgment debtor might well frustrate the clerk's ability to "immediately" docket the judgment, rendering the clerk liable under the statute. We decline to interpret the statute in a fashion that allows for such an unreasonable and unfair result. When engaging in statutory construction, we are entitled to consider, together with other factors, the consequences of alternative interpretations of the statute at issue. *Morford*, 268 Wis. 2d 300, ¶ 21. In all cases we are obligated to construe statutes in a manner that avoids absurd or unreasonable results. *Town of Avon v.*

*Oliver*, 2002 WI App 97, ¶ 7, 253 Wis. 2d 647, 644 N.W.2d 260.[9]

¶ 18. We hold that WIS. STAT. § 806.10(1) does not impose a ministerial duty on a clerk of circuit court to include the address of a judgment debtor on the judgment docket when the judgment does not include such information.[10]

### The Clerk's Duty to Docket the Foreclosure Judgment

¶ 19. Commercial also argues that the clerk of

---

[9] The clerk also argues that Commercial's action is barred by WIS. STAT. § 806.10(3), which limits an action against a clerk to instances where: (1) the clerk incorrectly enters the date or time of the judgment in the judgment docket; or (2) the clerk fails to enter the judgment in the judgment docket at the proper time. The clerk reasons that the legislature's failure to include instances where the clerk has failed to recite the address of the judgment debtor in the judgment docket as additional grounds for civil liability reflects a legislative decision to bar such actions. However, the clerk overlooks that Commercial is contending that the clerk's duty is ministerial. Such acts are not covered by the governmental immunity provisions of WIS. STAT. § 893.80(4). We read § 806.10(3) as speaking to discretionary acts of the clerk and to carve out exceptions against government immunity only in the two instances recited.

[10] Since we hold on a threshold basis that Commercial has not stated a claim for relief against the clerk, we need not address the clerk's further argument that Commercial's action is nonetheless barred by the statute of limitations and Commercial's rejoinder that the statute of limitations did not begin to run until the forfeiture proceedings when Commercial first discovered that the clerk had not included the judgment debtor's address in the judgment docket. Nor need we address the parties' debate as to whether Commercial timely served its Notice of Claim on the clerk.

circuit court further violated WIS. STAT. § 806.10(1) by failing to docket the foreclosure judgment, which preceded the deficiency judgment.[11] We summarily reject this argument. Section 806.10(1) expressly applies to "a judgment directing in whole or in part the payment of money." While the judgment of foreclosure indicates an amount due to Commercial from Frykholm, it does not direct or order the payment of any money. To the contrary, the judgment only orders the foreclosure or redemption of the property. Moreover, the foreclosure judgment anticipates the future entry of a deficiency judgment ordering the payment of money in the event the proceeds of the sheriff's sale did not satisfy the amount due to Commercial. Thus, the ensuing deficiency judgment, not the foreclosure judgment, constituted the only judgment eligible for docketing under § 806.10(1).

### *Propriety of Judgment on the Pleadings*

¶ 20. Finally, Commercial contends that the parties introduced additional material beyond the scope of the pleadings at the hearing on the clerk's motion for judgment on the pleadings. As such, Commercial contends that the motion was converted to one of summary

---

[11] The clerk argues that this issue is waived because Commercial first raised it as an allegation in an amended complaint filed *after* the trial court had ruled with finality on the clerk's motion for judgment on the pleadings. While the court allowed the filing of the amended complaint, Commercial never asked the court to conduct any further proceedings under the amended complaint. Therefore we have no trial court ruling on the question. Nonetheless, we choose to address the issue on the merits.

judgment and that the added information created material issues of fact warranting further proceedings or a trial.[12]

¶ 21. We also summarily reject this argument. As we have noted, a motion for judgment on the pleadings is the equivalent of a summary judgment motion minus affidavits and other supporting documents. *Schuster*, 144 Wis. 2d at 228. Also as noted, the first step in the methodology under either motion is to determine whether the complaint states a claim for relief. As we have already determined, Commercial's complaint states no such claim. Therefore, whether the clerk's motion is construed as one for judgment on the pleadings or as one for summary judgment, Commercial's complaint fails to pass muster.[13]

## CONCLUSION

¶ 22. We hold that the trial court properly adjudicated this matter via a motion for judgment on the pleadings and that the court correctly ruled that

---

[12] WISCONSIN STAT. § 802.06(3) recognizes that a motion for judgment on the pleadings is converted to a motion for summary judgment if matters not covered by the pleadings are presented to the trial court.

[13] Commercial also contends that the dismissal of its complaint via judgment on the pleadings was improper because the clerk raised contributory negligence as an affirmative defense in her answer. Commercial reasons that the assertion of such a defense required a trial on the question of the parties' comparative negligence. We disagree. We know of no law that precludes a motion for judgment on the pleadings simply because the moving party also has asserted an affirmative defense. Were the law otherwise, the parties and the circuit court would have to endure an unnecessary trial on a claim for which relief could not be granted.

Commercial's complaint failed to state a claim for relief. We affirm the order dismissing Commercial's complaint.

*By the Court.*—Order affirmed.