# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP130 |

| | |
|---|---|
| COMPLETE TITLE: | Southport Commons, LLC, |
| |          Plaintiff-Appellant-Petitioner, |
| |     v. |
| | Wisconsin Department of Transportation, |
| |          Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 392 Wis. 2d 207,944 N.W.2d 46
PDC No:2020 WI App 26 - Published

| | |
|---|---|
| OPINION FILED: | June 8, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 13, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Kenosha |
|   JUDGE: | David M. Bastianelli |

JUSTICES:
ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:
    For the plaintiff-appellant-petitioner, there were briefs filed by *Alan Marcuvitz, Smitha Chintamaneni, Andrea H. Roschke, Adam S. Bazelon,* and *Von Briesen & Roper, S.C.*, Milwaukee. There was an oral argument by *Smitha Chintamaneni* and *Alan MarcuvitzI.*

    For the defendant-respondent, there was a brief filed by *Jennifer L. Vandermeuse*, assistant attorney general; with whom on the brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Jennifer L. Vandermeuse.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP130
(L.C. No. 2018CV345)

STATE OF WISCONSIN          :        IN SUPREME COURT

**Southport Commons, LLC,**

      **Plaintiff-Appellant-Petitioner,**

  **v.**

**Wisconsin Department of Transportation,**

      **Defendant-Respondent.**

**FILED**

**JUN 8, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Southport Commons, LLC (Southport), seeks review of a published court of appeals decision that affirmed the circuit court's grant of the Department of Transportation's (DOT) motion for judgment on the pleadings.[1] Southport asserts that the court of appeals erred in

---

[1] Southport Commons, LLC v. DOT, 2020 WI App 26, 392 Wis. 2d 207, 944 N.W.2d 46 (affirming the order of the circuit court for Kenosha County, David M. Bastianelli, Judge).

determining that its notice of claim pursuant to Wis. Stat. § 88.87(2)(c) (2017-18)[2] was not timely filed.

¶2   Wisconsin Stat. § 88.87(2)(c) provides that a property owner damaged by the construction or maintenance of a highway or railroad grade must file a notice of claim "within 3 years after the alleged damage occurred" as a prerequisite to filing a lawsuit.  Southport contends that its notice of claim, filed within three years of when the damage was discovered, is sufficient.  Alternatively, Southport asserts that the damage to its land occurred continuously over time and that the actual time the damage occurred in this case was undetermined and requires remand to the circuit court for fact finding.

¶3   DOT disagrees, arguing that "occurred" is not synonymous with "discovered" and that under a plain reading of the statute, Southport's notice of claim was not timely filed. It further contends that Southport did not raise its alternative argument in the circuit court or court of appeals, and as a result this court should not consider it.

¶4   We conclude that "occurred" in the context of Wis. Stat. § 88.87(2)(c) does not mean "discovered."  The notice of claim period in § 88.87(2)(c) begins to run when the damage happens or takes place.

¶5   Further, we conclude that Southport failed to meaningfully develop in the circuit court or court of appeals an

_____

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

argument that the damage to its property occurred gradually over a period of years. Instead, it argued only that the notice of claim requirement is triggered by discovery. As a consequence, Southport did not raise a genuine issue of material fact as to the date of damage, and the circuit court properly granted DOT's motion for judgment on the pleadings.

¶6 Accordingly, we affirm the decision of the court of appeals.

I

¶7 The facts set forth below are taken from Southport's verified petition-complaint. Because we are reviewing the circuit court's determination of a motion for judgment on the pleadings, we address first whether the complaint states a claim and we assume these facts as alleged are true.[3]

¶8 Southport owns land in Kenosha County that contains approximately 45.22 acres of vacant land. The property is now severed by an Interstate 94 frontage road.

¶9 In 2008 and 2009, DOT engaged in a construction project to relocate the frontage road, which was formerly located entirely east of the property. The new location of the road resulted in the bisection of the property.

¶10 Prior to the construction project, the property was surveyed. The result of the survey was the identification and delineation of three areas of wetlands on the property.

---

[3] See Helnore v. DNR, 2005 WI App 46, ¶2, 280 Wis. 2d 211, 694 N.W.2d 730.

¶11 Construction was completed in 2009, and in 2016 Southport obtained a new survey and new wetland delineation in an attempt to determine the feasibility of future commercial development on the site. The new wetland delineation, which is dated July 20, 2016, "identifies a significant increase in the size and amount of wetlands on the Property, resulting from DOT's Construction Project." Specifically, the new report identifies six distinct wetland areas, including three areas of wetlands that did not exist prior to the construction project, and a significant increase in the size of the three previously existing wetlands.

¶12 Southport alleged that before obtaining the post-construction wetland delineation, it had no knowledge of the creation of new wetlands or the expansion of existing wetlands on the site. It further alleged that the new and expanded wetlands caused significant damage to the property.

¶13 On March 2, 2017, Southport filed a "Notice of Claim and Claim Against the Wisconsin Department of Transportation Pursuant to Wis. Stat. § 88.87(2)(c)." DOT did not respond to the Notice of Claim and Claim, effectively denying it.

4

¶14 Subsequently, Southport filed suit against DOT, claiming inverse condemnation.[4] Specifically, it alleged:

> DOT's faulty construction during DOT's Construction Project and continued faulty maintenance of 120th Avenue has impeded, and continues to impede, the general flow of water in an unreasonable manner so as to cause an unnecessary accumulation of waters and an unreasonable discharge of waters onto the Property, which has directly resulted in the creation of the New Wetlands and Larger Wetlands on the Property, thus severely damaging Southport by rendering large portions of the Property undevelopable and impinging on Southport's ability to develop the Property.

In Southport's estimation, such change in its land amounted to a taking for which it sought just compensation.

¶15 DOT answered the complaint and subsequently moved for judgment on the pleadings. The motion was based on the assertion that Southport failed to file its notice of claim within three years of when the damage occurred as Wis. Stat. § 88.87(2)(c) requires. In response, Southport contended that § 88.87(2)(c), as interpreted in Pruim v. Town of Ashford, 168 Wis. 2d 114, 483 N.W.2d 242 (Ct. App. 1992), allows a notice of claim to be filed within three years after the damage is discovered, and that its notice of claim was therefore timely.

---

[4] "Inverse condemnation is a procedure by which a property owner petitions the circuit court to institute condemnation proceedings." Maple Grove Country Club Inc. v. Maple Grove Ests. Sanitary Dist., 2019 WI 43, ¶13 n.9, 386 Wis. 2d 425, 926 N.W.2d 184. "It 'allows a property owner to institute condemnation proceedings against anyone who possesses, but fails to exercise, the power of condemnation.'" Id. (quoting Koskey v. Town of Bergen, 2000 WI App 140, ¶5, 237 Wis. 2d 284, 614 N.W.2d 845); see Wis. Stat. § 32.10; Wis. Const. art. I, § 13.

¶16 The circuit court granted DOT's motion. Relying on the plain language of Wis. Stat. § 88.87(2)(c), it determined that "[t]he statute is plain on its face. It does say occurred." Further, the circuit court stated that the damage occurred in 2009 at the latest and that accordingly the notice of claim was not timely filed.

¶17 Southport appealed, and the court of appeals affirmed the circuit court in a published decision. Southport Commons, LLC v. DOT, 2020 WI App 26, 392 Wis. 2d 207, 944 N.W.2d 46. Like the circuit court, the court of appeals focused on the legislature's choice to use the word "occurred" rather than "discovered." It determined that "[w]hen the legislature intends to have a statutory limitation period begin to run when damage is discovered, as opposed to when it occurs, the legislature has no problem explicitly stating so." Id., ¶9. Further, the court of appeals concluded that Pruim, relied upon by Southport, "does not control [its] decision in this case" because "the issue and circumstances before [it] in Pruim were significantly different from those before [it] now." Id., ¶10. Southport petitioned for review in this court.

II

¶18 We are called upon to review the court of appeals' determination that the circuit court properly granted DOT's motion for judgment on the pleadings. A judgment on the pleadings is essentially a summary judgment decision without affidavits and other supporting documents. McNally v. Capital Cartage, Inc., 2018 WI 46, ¶23, 381 Wis. 2d 349, 912 N.W.2d 35.

6

Judgment on the pleadings is proper only if there are no genuine issues of material fact. Id. Whether judgment on the pleadings should be granted is a question of law we review independently of the determinations rendered by the circuit court and court of appeals. Id., ¶24.

¶19 In our review, we interpret and apply Wis. Stat. § 88.87(2)(c). Statutory interpretation and application are likewise questions of law we review independently of the determinations made by the circuit court and court of appeals. Metro. Assocs. v. City of Milwaukee, 2018 WI 4, ¶24, 379 Wis. 2d 141, 905 N.W.2d 784.

III

¶20 We begin by interpreting the word "occurred" in Wis. Stat. § 88.87(2)(c). Subsequently, we examine the pleadings and arguments made in this case and apply our interpretation of § 88.87(2)(c) to the facts at hand.

A

¶21 Wisconsin Stat. § 88.87 "was enacted to regulate the construction and drainage of all highways in order to protect property owners from damage to lands caused by unreasonable diversion or retention of surface waters due to the construction of highways or railroad beds." Lins v. Blau, 220 Wis. 2d 855, 859, 584 N.W.2d 183 (Ct. App. 1998). It "imposes a duty on governmental entities to refrain from impeding the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable

7

accumulation and discharge of surface waters flooding or water-soaking lowlands." Id. at 859-60 (internal quotation omitted).

¶22 Paragraph (2)(c) creates a remedy for property owners who claim damages from a violation of Wis. Stat. § 88.87. Id. at 860. It also establishes certain procedures to be followed in making a claim. Van v. Town of Manitowoc Rapids, 150 Wis. 2d 929, 930, 442 N.W.2d 557 (Ct. App. 1989).

¶23 Wisconsin Stat. § 88.87(2)(c) addresses when a claim must be filed:

> If a city, village, town, county or railroad company or the department of transportation constructs and maintains a highway or railroad grade not in accordance with par. (a), any property owner damaged by the highway or railroad grade may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company. The claim shall consist of a sworn statement of the alleged faulty construction and a description, sufficient to determine the location of the lands, of the lands alleged to have been damaged by flooding or water-soaking.

It further delineates the post-filing process:

> Within 90 days after the filing of the claim, the governmental agency or railroad company shall either correct the cause of the water damage, acquire rights to use the land for drainage or overflow purposes, or deny the claim. If the agency or company denies the claim or fails to take any action within 90 days after the filing of the claim, the property owner may bring an action in inverse condemnation under ch. 32 or sue for such other relief, other than damages, as may be just and equitable.

¶24 Southport contends that by filing its notice of claim under Wis. Stat. § 88.87(2)(c) within three years of the time the damage was discovered, it fulfills the statutory requirement

8

that the notice be filed within three years of when the damage occurred. DOT disagrees, arguing that "occurred" is not synonymous with "discovered."

¶25 To resolve this dispute, we must interpret the language of Wis. Stat. § 88.87(2)(c). Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not inquire further. Id.

¶26 Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. Id. We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

¶27 We therefore begin with the language of the statute, and specifically the phrase, "within 3 years after the alleged damage occurred," with our focus being on the word "occurred." The parties each advocate for a different definition of the word. Southport proffers "to be found to exist or appear." DOT, in contrast, puts forth "something that takes place" or "something that happens."

¶28 "For purposes of statutory interpretation or construction, the common and approved usage of words may be established by consulting dictionary definitions." State v.

9

Sample, 215 Wis. 2d 487, 499, 573 N.W.2d 187 (1998). The court of appeals did just this when it determined that "[d]amage 'occurs' when it happens or takes place." Southport Commons, 392 Wis. 2d 207, ¶7 (citing Occur, Webster's Third New Int'l Dictionary (unabr. 1993)).

¶29 We agree with both the approach and the result of the court of appeals. The court of appeals correctly determined that in common and ordinary usage, something "occurs" when it happens or takes place. See Occurrence, Black's Law Dictionary 1299 (11th ed. 2019) (defining "occurrence" as "[s]omething that happens or takes place"). This is certainly a more common definition for "occur" than that offered by Southport. It is the "common, ordinary, and accepted meaning" of a word that governs. Kalal, 271 Wis. 2d 633, ¶45.

¶30 It is not only the dictionary that supports such a determination, but it is also our case law. We have previously stated that "[t]he ordinary and common meaning of 'occurrence' is 'something that takes place; something that happens unexpectedly and without design.'" Kremers-Urban Co. v. Am. Emp.'s Ins. Co., 119 Wis. 2d 722, 741, 351 N.W.2d 156 (1984). The common usage of the word "occurred" thus has no element of discovery as Southport contends.

¶31 When the legislature wants to make discovery the trigger for a statutory filing requirement, it knows how to do so. Indeed, it has done so in other areas of the Wisconsin Statutes. For example, in Wis. Stat. § 893.55(1m), the medical malpractice statute of limitations, the legislature set forth

10

that an action "shall be commenced within the later of: (a) Three years from the date of the injury, or (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission." Further examples of discovery as a trigger for a filing deadline abound in the Wisconsin Statutes.[5]

¶32 Unlike Wis. Stat. § 893.55(1m), Wis. Stat. § 88.87(2)(c) does not contain any reference to "discovery." The legislature is presumed to "carefully and precisely" choose statutory language to express a desired meaning. Indus. to

_____

[5] See, e.g., Wis. Stat. §§ 411.506(2) ("A cause of action for default accrues when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later."); 893.51(2) ("An action under s. 134.90 shall be commenced within 3 years after the misappropriation of a trade secret is discovered or should have been discovered by the exercise of reasonable diligence."); 893.555(2) ("[A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a long-term-care provider . . . shall be commenced within the later of: (a) Three years from the date of the injury. (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered . . . ."); 893.80(1p) ("In any such action, [a claim to recover damages against any political corporation, governmental subdivision or agency thereof for the negligent inspection of any property, premises, place of employment or construction site for the violation of any statute, rule, ordinance or health and safety code,] the time period under sub. (1d)(a) shall be one year after discovery of the negligent act or omission or the date on which, in the exercise of reasonable diligence the negligent act or omission should have been discovered.")

11

Indus., Inc. v. Hillsman Modular Molding, Inc., 2002 WI 51, ¶19 n.5, 252 Wis. 2d 544, 644 N.W.2d 236 (citation omitted). From this, we conclude that the legislature chose not to include a discovery provision in § 88.87(2)(c), and it would be error to read one in. See Dawson v. Town of Jackson, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write.").

¶33 This result is further supported by the legislative history of Wis. Stat. § 88.87(2)(c). See State v. Wilson, 2017 WI 63, ¶23, 376 Wis. 2d 92, 896 N.W.2d 682 (explaining that "legislative history and other authoritative sources may be consulted to confirm a plain meaning interpretation"). As set forth by the court of appeals in Lins, in 1993 the legislature amended § 88.87(2)(c), lengthening the claim period from 90 days to three years. Lins, 220 Wis. 2d at 861; see 1993 Wis. Act 456, § 109.

¶34 According to the Legislative Council Special Committee Note accompanying the enactment of this change, "[t]he legislature made this change with the intent to provide the landowner with 'sufficient time to discover the damage.'" Lins, 220 Wis. 2d at 861 (quoting Legislative Council Special Committee Note, 1993 Wis. Act 456, § 109). This Note indicates that the legislature had deemed three years to be "sufficient time to discover the damage" and that after that time had passed discovery would not trigger the notice of claim period. As DOT argued in its brief, "[t]his change would have been unnecessary if the notification period does not begin until the damage is

12

discovered." The legislature thus did not intend an open-ended claim period such as that for which Southport advocates.[6]

¶35 Despite the plain language of the statute, Southport contends that the court of appeals' decision in _Pruim_, 168 Wis. 2d 114, compels an opposite result. In _Pruim_, the plaintiff filed a notice of claim and eventually sued the Town of Ashford for negligently constructing and maintaining a road shoulder, which the plaintiff identified as a continuing nuisance. _Id._ at 117. The court was presented with the question of whether the limitation period of Wis. Stat. § 88.87(2)(c) (then 90 days) began to run when the injury was discovered or if it "reset" at each occurrence of a continuing nuisance.

¶36 It determined that the former was the correct formulation——"ninety days from the date first discovered." _Id._ In arriving at its conclusion, the _Pruim_ court seemingly used the words "occurred" and "discovered" interchangeably. For example, the opinion stated with respect to Wis. Stat.

---

[6] An open-ended claim period would further run counter to the general purpose of notice of claim statutes. Generally, the purposes of notice of claim statutes are to allow governmental entities to investigate and evaluate potential claims and to afford them the opportunity to compromise and settle claims, thereby avoiding costly and time-consuming litigation. _Yacht Club at Sister Bay Condo. Ass'n v. Village of Sister Bay_, 2019 WI 4, ¶20, 385 Wis. 2d 158, 922 N.W.2d 95. An open-ended claim period would not provide governmental entities with sufficient information to allow them to budget for either a settlement or litigation, and would thus undermine this purpose. _See id._, ¶37.

§ 88.87(2)(c), "[t]he statute is unambiguous. The notice of claim must be made within ninety days after the damage occurred and is discovered, and the claims for relief are limited to inverse condemnation or any sort of equitable relief short of damages." Id. at 119.

¶37 The Pruim court continued:

We have no hesitancy in concluding that the ninety-day provision did not contemplate allowing a new cause of action each day the damage continues. To the contrary, the statute contemplates the opposite. We read the statute to say that when the damage is first discovered, the time begins to run. To read it any other way would be contrary to the unambiguous language of the statute and clearly contrary to the intent expressed by the committee.

Id. at 123 (emphasis added). Accordingly, Southport asserts that under Pruim, "discovery" triggers Wis. Stat. § 88.87(2)(c)'s notice of claim period.

¶38 At first blush, the above-cited passages from Pruim support Southport's argument. After all, the Pruim court used the phrase "first discovered" rather than "first occurred." However, that argument falls apart when the circumstances that gave rise to the claim in Pruim are closely examined.

¶39 To explain, the landowner in Pruim discovered the damage in the immediate aftermath of its occurrence. See id. at 122 (explaining that "it is undisputed that Pruim discovered the damage right after the heavy rainstorm of March 13, 1990"). Within that context, the court's use of the phrase "occurred and is discovered," along with its use of the two terms interchangeably, makes sense. However, the Pruim court did not

14

address the question raised in the instant case, i.e., when the notice of claim period begins when discovery happens long after the damage occurs. Pruim is distinguishable on its facts, and thus it does not control the outcome here.

¶40 We therefore conclude that "occurred" in the context of Wis. Stat. § 88.87(2)(c) does not mean "discovered." The notice of claim period in § 88.87(2)(c) begins to run when the damage happens or takes place.

B

¶41 We turn next to examine the pleadings and arguments made in this case and apply our interpretation of Wis. Stat. § 88.87(2)(c) to the facts at hand.

¶42 Our review is guided by the methodology for evaluating a motion for judgment on the pleadings. "We determine first whether the complaint has stated a claim." McNally, 381 Wis. 2d 349, ¶23. "If so, we next examine the responsive pleading to ascertain whether an issue of material fact exists." Id.

¶43 Judgment on the pleadings is proper if there are no genuine issues of material fact. Id. "A factual issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id., ¶24.

¶44 As an initial matter, Southport's complaint states a claim for inverse condemnation. To state an inverse condemnation claim, a property owner must allege a property interest sufficient to make them an owner, an occupation or taking of the property, and that the condemnor has failed to

15

exercise its condemnation powers. See Maxey v. Redevelopment Auth. of Racine, 94 Wis. 2d 375, 387, 288 N.W.2d 794 (1980). Southport alleges that it is the sole owner of the property at issue, that DOT has occupied and taken portions of Southport's property through faulty construction and maintenance of the frontage road, and that DOT did not exercise its power of condemnation. This is sufficient to state an inverse condemnation claim.

¶45 Following the judgment on the pleadings methodology, we surmise next whether a genuine issue of material fact exists as to the date of the damage. Southport's complaint alleges that the damage to its land was discovered in 2016. However, it makes no allegation regarding the date the damage is alleged to have occurred. The complaint states: "During approximately 2008 through 2009 DOT proceeded with a construction project that, inter alia, relocated the I-94 frontage road, which was formerly located entirely east of the Property, to a new location resulting in the bisection of the Property by the new frontage road . . . ."

¶46 With no allegation that the damage occurred within the three years prior to the filing of the notice of claim, and no supporting materials placing such a fact in issue, we must determine that judgment on the pleadings was properly granted by the circuit court. In other words, there is no genuine issue of material fact as to the date of the damage because Southport did not allege such a factual dispute. Southport put all of its eggs in the basket of "discovery" and did not meaningfully

16

develop in either the circuit court or court of appeals any argument that the damage occurred surreptitiously over time.[7] As such, it would be improper for this court to rely on such a basis here.

¶47 Further, it would not have taken much to raise an issue of material fact. In response to DOT's motion for judgment on the pleadings, Southport could have filed an affidavit placing the date of damage in issue and thus converted the motion for judgment on the pleadings to a motion for summary judgment. See Wis. Stat. § 802.06(3); Schuster v. Altenberg, 144 Wis. 2d 223, 228, 424 N.W.2d 159 (1988) ("[A] motion for judgment on the pleadings will be converted to a motion for summary judgment if matters outside the pleadings are presented to the court."). Similarly, it could have alleged surreptitious damage over time in the complaint or moved to amend the complaint after DOT filed its motion.

¶48 This is not to say that Southport needs to allege compliance with Wis. Stat. § 88.87(2)(c) in its complaint in

---

[7] At oral argument, the court questioned Southport's counsel as follows:

> Your focus was not on when the damage occurred. Therefore, you didn't plead when the damage occurred because your whole approach was when it was discovered. So when it occurred isn't all that important to you. When it was discovered is the linchpin of your pleadings and also your argument in the circuit court, is that correct?

> Counsel answered in the affirmative.

17

order to survive a motion for judgment on the pleadings. See Maple Grove Country Club Inc. v. Maple Grove Ests. Sanitary Dist., 2019 WI 43, ¶49, 386 Wis. 2d 425, 926 N.W.2d 184 (citing Rabe v. Outagamie Cnty., 72 Wis. 2d 492, 498, 241 N.W.2d 428 (1976)). But when DOT filed its motion for judgment on the pleadings, Southport needed to do something to create a factual dispute. Arguing only that "occurred" means "discovered" was not sufficient.

IV

¶49 In sum, we conclude that "occurred" in the context of Wis. Stat. § 88.87(2)(c) does not mean "discovered." The notice of claim period in § 88.87(2)(c) begins to run when the damage happens or takes place.

¶50 Further, we conclude that Southport failed to meaningfully develop in the circuit court or court of appeals an argument that the damage to its property occurred gradually over a period of years. Instead, it argued only that the notice of claim requirement is triggered by discovery. As a consequence, Southport did not raise a genuine issue of material fact as to the date of damage, and the circuit court properly granted DOT's motion for judgment on the pleadings.

¶51 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

18

¶52 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* This decision adjudicates Southport Commons, LLC's claim for inverse condemnation based on the Department of Transportation's (DOT) construction and continued maintenance of the frontage road for I-94, a/k/a 120th Avenue, which Southport avers caused accumulations of water that damaged its property. The DOT moved for Judgment on the Pleadings, and the circuit court dismissed Southport's Verified Complaint,[1] after concluding that it failed to state a claim upon which relief can be granted.[2] As I explain below, this was an erroneous legal conclusion because Southport's Verified Complaint sufficiently alleged a claim for inverse condemnation.

¶53 However, a review of the transcript from the circuit court proceedings shows that the circuit court's judgment was not grounded in its conclusion that a claim for inverse condemnation had not been made within the four corners of Southport's Verified Complaint. But rather, the circuit court interpreted Wis. Stat. § 88.87(2)(c) and concluded that Southport had failed to file a claim with DOT "within three years after the alleged damage occurred." The circuit court

---

[1] Verification requires, "A formal declaration made in the presence of an authorized officer, such as a notary public . . . where one swears to the truth of the statements in the document. Traditionally, a verification is used as a conclusion for all pleadings that are required to be sworn." Black's Law Dictionary, 1698 (9th ed. 2009).

[2] R.28:22.

1

defined "occurred" as "happened," and because DOT's construction concluded in 2009, the circuit court concluded the damages happened when construction was concluded. Thereafter, the circuit court applied the three year notice provision in § 88.87(2)(c) to Southport's takings claim as though it were a statute of repose.[3] The court of appeals affirmed dismissal on the same grounds, Southport Commons, LLC v. DOT, 2020 WI App 26, ¶16, 392 Wis. 2d 207, 944 N.W.2d 46, and the majority repeats that error for a third time.[4]

¶54 Southport's Verified Complaint avers that damage resulted both from DOT's construction and from DOT's maintenance of the frontage road it constructed.[5] Southport was not required to plead when damage occurred in order to make a valid claim for inverse condemnation. Maxey v. Redevelopment Auth. of Racine, 94 Wis. 2d 375, 397, 288 N.W.2d 794 (1980) (concluding that Wis. Stat. § 32.10, the statute that establishes the requirement for inverse condemnation, sets no fixed date for evaluation).

¶55 The Answer says nothing about when "damage occurred." DOT simply "denies that construction of Project ID #1032-14-74 and its continued maintenance of 120th Avenue have directly caused both the alleged new wetlands and the alleged larger

---

[3] R.28:22.

[4] Majority op., ¶4.

[5] Verified Complaint, ¶¶7, 10, 15, 17, 19, 28.

2

wetlands."[6]   This allegation created an issue of fact about whether DOT's actions were a cause of Southport's damages.

¶56  As the movant, DOT had the burden to prove that it was entitled to judgment on the pleadings.  Furthermore, failing to comply with a notice of claim statute is an affirmative defense Maple Grove Country Club Inc. v. Maple Grove Ests. Sanitary Dist., 2019 WI 43, ¶3, 386 Wis. 2d 425, 926 N.W.2d 184 (concluding that "noncompliance with the notice of claim statute is an affirmative defense that must be set forth in a responsive pleading").  DOT, as the proponent of the affirmative defense, had the burden of proof on that defense.  See State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶38, 290 Wis. 2d 352, 714 N.W.2d 900 (concluding that the "State has the burden of proof in regard to all the elements of its laches defense").  The pleadings do not provide the proof necessary for DOT to prevail on its affirmative defense.

¶57 Maybe Southport would lose when the facts were developed, but maybe not.  However, this is not a case that can be decided on the pleadings.  The Verified Complaint clearly states a claim for inverse condemnation, as the majority opinion initially acknowledges.[7]  Southport's claim is grounded in an alleged governmental taking without just compensation, and it follows the requirements of Wis. Stat. § 32.10 in regard to claims for inverse condemnation.  As we have explained many

---

[6] Answer and Affirmative Defense, ¶17.

[7] Majority op., ¶44.

times, a claim for inverse condemnation arises from rights of property owners that are protected by two constitutions. Brenner v. New Richmond Reg'l Airport Comm'n, 2012 WI 98, ¶¶37-40, 343 Wis. 2d 320, 816 N.W.2d 291.

¶58 I write in dissent because basic rules of civil procedure that control when judgment on the pleadings may be granted have been disregarded by three courts. In addition, the majority opinion creates a new element for an inverse condemnation claim and converts an affirmative defense into a pleading requirement for Southport. When this court disregards basic rules of civil procedure, changes pleading rules and overrules precedent of this court without so much as a by-your-leave in order to obtain the outcome it prefers, it causes confusion throughout the court system that goes far beyond Southport's claim for inverse condemnation. Accordingly, I respectfully dissent.

## I. BACKGROUND

¶59 The only factual allegations about water damage to Southport's property were set out in the Complaint, whose allegations were made by a sworn statement, i.e., in a verified complaint, as Wis. Stat. § 88.87(2)(c) and Wis. Stat. § 32.10 required. Southport repeatedly averred that damage to its property occurred both from DOT's faulty construction and from DOT's faulty maintenance of the frontage road it constructed.[8]

---

[8] Verified Complaint, ¶¶7, 10, 15, 17, 19, 28.

¶60 In regard to its claim for inverse condemnation, Southport averred that it is the "sole owner of the Property."[9] That during "approximately 2008 through 2009 DOT proceeded with a construction project that . . . relocated the I-94 frontage road," a/k/a 120th Avenue.[10] Following DOT's construction, there was a "significant increase in the size and amount of wetlands on [Southport's] Property."[11] Southport also averred that "DOT's Construction Project and its continued maintenance of 120th Avenue has directly caused both the New Wetlands and the Larger Wetlands."[12] That "the wetlands created on the Property as a result of DOT's Construction Project and ongoing maintenance of 120th Avenue" damaged Southport's Property.[13] "DOT's faulty construction during DOT's Construction Project and continued faulty maintenance of 120th Avenue has impeded, and continues to impede, the general flow of water in an unreasonable manner so as to cause an unnecessary accumulation of waters and an unreasonable discharge of waters onto the Property."[14]

¶61 Most of DOT's Answers to the Verified Complaint were either denials or denials based on insufficient knowledge.[15] DOT

---

[9] Id., ¶7.

[10] Id., ¶10.

[11] Id., ¶15.

[12] Id., ¶17.

[13] Id., ¶19.

[14] Id., ¶28.

[15] Answer and Affirmative Defense, ¶¶1, 2, 5-7, 11-22, 28-32.

5

made no allegation of when damage occurred. DOT does admit that Southport filed a claim with DOT, but "denies that the notice of claim and claim were timely filed."[16] DOT also lists eight affirmative defenses: failure to state a claim, sovereign immunity, circuit court lacked subject matter jurisdiction, statutes of limitation, laches, contributory negligence, superseding cause and failure to mitigate damages.[17] Therefore, based on the four corners of the pleadings of both parties, it is only Southport who avers, as general statements, that damage began with DOT's construction and continued due to DOT's maintenance of the road it constructed.

## II. DISCUSSION

### A. Standard of Review

¶62 DOT moved for judgment on the pleadings pursuant to Wis. Stat. § 802.06(3). "A judgment on the pleadings is essentially a summary judgment minus affidavits and other supporting documents." Commercial Mortg. & Fin. Co. v. Clerk of Cir. Ct., 2004 WI App 204, ¶10, 276 Wis. 2d 846, 689 N.W.2d 74. When reviewing a decision on such a motion, we begin by independently examining the complaint to determine whether a claim has been stated. Id. If a claim has been stated, then we examine responsive pleadings to determine whether issues of material fact or law have been joined. Id. Because complaints are to be liberally construed, "we may dismiss the claim only if

---

[16] Id., ¶23.

[17] Id., ¶¶A-F.

6

it is 'quite clear that under no conditions can the plaintiff recover.'" Hausman v. St. Croix Care Ctr., 214 Wis. 2d 655, 663, 571 N.W.2d 393 (1997).

¶63 The circuit court said that it dismissed Southport's complaint for failing to state a claim.[18] Whether a complaint fails to state a claim is a question of law that we independently decide. Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶10, 283 Wis. 2d 555, 699 N.W.2d 205; Hausman, 214 Wis. 2d at 662. During our review, "we are concerned only with the legal sufficiency of the complaint." Kohlbeck v. Reliance Const. Co., Inc., 2002 WI App 142, ¶9, 256 Wis. 2d 235, 647 N.W.2d 277.

¶64 A review of the record shows that the circuit court actually did not conclude that the Verified Complaint failed to state a claim for inverse condemnation. Rather, the circuit court concluded, at DOT's urging, that Wis. Stat. § 88.87(2)(c) created a three-year statute of repose starting when DOT completed the construction project on Southport's property. Because Southport filed its notice of claim with DOT after that three-year period, the circuit court dismissed its inverse condemnation claim. The majority opinion does the same thing.[19]

B. Legal Issues

1. Inverse Condemnation

---

[18] R.28:22.

[19] Majority op., ¶¶45, 46.

¶65 Southport's claim is for inverse condemnation. A claim for inverse condemnation is made pursuant to Wis. Stat. § 32.10 and has four elements: (1) the plaintiff owned the property at issue; (2) actions by a person with condemnation power; (3) those actions permanently damaged or took plaintiff's property; (4) failure of the condemnor to bring a direct condemnation proceeding. Andersen v. Vill. of Little Chute, 201 Wis. 2d 467, 478, 549 N.W.2d 737 (1996); Maxey, 94 Wis. 2d at 386.

¶66 Here, Southport alleged that it owned the property at issue.[20] That DOT possessed the power of condemnation.[21] That DOT re-constructed the frontage road for I-94, a/k/a 120th Avenue, on its property.[22] DOT's construction and continued maintenance of 120th Avenue caused a "significant increase in the size and amount of wetlands on [Southport's Property]."[23] That "DOT has taken Southport's Property and/or occupied Southport's Property for drainage and/or with drainage easements (the 'Taking') without properly exercising its power of condemnation, including the payment of just compensation for the Taking."[24]

---

[20] Verified Complaint, ¶7.

[21] Id., ¶4.

[22] Id., ¶10.

[23] Id., ¶¶15, 17.

[24] Id., ¶29.

8

¶67 There can be no question that the Verified Complaint stated a claim for inverse condemnation. The majority opinion initially agreed with my conclusion, as it explains in paragraph 44:

> Southport alleges that it is the sole owner of the property at issue, that DOT has occupied and taken portions of Southport's property through faulty construction and maintenance of the frontage road, and that DOT did not exercise its power of condemnation. This is sufficient to state an inverse condemnation claim.[25]

¶68 However, the majority opinion then morphs into discussing a fact that Southport was not required to plead in order to state a claim for inverse condemnation. The majority opinion is creative in how it gets around basic rules of civil procedure. First, it concludes that Southport stated a claim for inverse condemnation,[26] then it adds a new requirement to pleadings for inverse condemnation. The majority opinion says,

> Following the judgment on the pleadings methodology, we surmise next whether a genuine issue of material fact exists as to the date of the damage . . . [Southport] makes no allegation regarding the date the damage is alleged to have occurred.[27]

Because Southport did not allege "the date of the damage," the majority grants what it labels judgment on the pleadings to DOT. The majority states,

> With no allegation that the damage occurred within the three years prior to the filing of the notice of

---

[25] Majority op., ¶44.

[26] Id.

[27] Majority op., ¶45 (emphasis in majority opinion).

9

> claim, and no supporting materials placing such a fact in issue, we must determine that judgment on the pleadings was properly granted by the circuit court. In other words, there is no genuine issue of material fact as to the date of the damage because Southport did not allege such a factual dispute.[28]

¶69 The reader should take note that the majority opinion actually is making two legal determinations that are quite different from what one would ascertain by simply reading the quoted words. First, the majority opinion has added a new required element for an inverse condemnation claim, the date the damage occurred. There is no support for this in Wis. Stat. § 32.10 which establishes the elements of an inverse condemnation claim, or for that matter, in the reasoning of the majority opinion. It is just a way to get the result the majority prefers. Second, the majority opinion converted an affirmative defense, noncompliance with a notice of claim statute, into a pleading obligation for a plaintiff in an inverse condemnation claim. All of this is new law that has no legal foundation, ignores basic rules of civil procedure and, in regard to the conversion of the affirmative defense, is in direct conflict with our decision in Maple Grove, as I explain below.

### 2. Affirmative Defense

¶70 Due to prior court decisions, and now the majority opinion, central to my review is the notice of claim under Wis. Stat. § 88.87(2)(c) that DOT contends Southport did not timely accommodate. We have examined notice of claim statutes in the

---

[28] Majority op., ¶¶45, 46.

10

past and have concluded that "noncompliance with the notice of claim statute is an affirmative defense that must be set forth in a responsive pleading." Maple Grove, 386 Wis. 2d 425, ¶3.

¶71 In Maple Grove, it was alleged that the plaintiff, Country Club, did not timely comply with the notice of claim required by Wis. Stat. § 893.80(1)(a). Id., ¶1. On that basis, the circuit court dismissed Country Club's claim even though Sanitary District did not raise noncompliance with the statute in responsive pleadings. Id. On review, we concluded that "noncompliance with the notice of claim statute is an affirmative defense that must be set forth in a responsive pleading." Id., ¶3. Because Sanitary District did not do so, we concluded that failing to comply with the notice of claim statute could not be raised as a defense to Country Club's inverse condemnation claim. Id.

¶72 Maple Grove teaches that timeliness of compliance with a notice of claim statute was DOT's issue to raise as an affirmative defense. Id. And, as an affirmative defense, it was DOT's burden to prove that notice was not timely. See Red Top Farms v. DOT, 177 Wis. 2d 822, 826, 503 N.W.2d 354 (1983) (concluding that the burden of proof for the affirmative defense rested on DOT).

¶73 Under our liberal pleading rules, one could stretch the Answer, which never mentions Wis. Stat. § 88.87(2)(c) or Wis. Stat. § 32.10, to encompass raising a § 88.87(2)(c) affirmative defense. However, Southport averred that it timely complied with the notice of claim statute, and as we explained

11

in Maple Grove and Red Top Farms, it was DOT's affirmative burden to prove that Southport did not do so. Maple Grove, 386 Wis. 2d 425, ¶34; Red Top Farms, 177 Wis. 2d at 826.

¶74 In our review of DOT's motion for Judgment on the Pleadings, we begin with the Verified Complaint. Southport repeatedly averred that damage to its property occurred both from DOT's faulty construction and from DOT's faulty maintenance of the frontage road it constructed.[29] Southport also alleged, "DOT's faulty construction during DOT's Construction Project and continued faulty maintenance of 120th Avenue has impeded, and continues to impede, the general flow of water in an unreasonable manner so as to cause an unnecessary accumulation of waters and an unreasonable discharge of waters onto the Property."[30] Southport alleged continuing damage due to construction and due to maintenance of 120th Avenue.

¶75 The Answer and Affirmative Defense do not mention Wis. Stat. § 88.87(2)(c) or state a date on which "damage occurred." Notwithstanding that omission, DOT convinced the circuit court, court of appeals and now those in the majority opinion that "occurred" means "happened" and that the damage happened when construction was complete in 2009. Three courts have disregarded the rules of civil procedure relative to motions for judgment on the pleadings by failing to accept the averments in

---

[29] Verified Complaint, ¶¶7, 10, 15, 17, 19, 28.

[30] Id., ¶28.

12

the Verified Complaint and to evaluate defensive pleadings fairly.

¶76  In that latter regard, DOT's motion for judgment on the pleadings actually was a motion for judgment on its affirmative defense.  Intertwined with that defense are factual questions about DOT's ongoing maintenance of 120th Avenue and whether that maintenance factually affected Southport's damage.  There also are legal questions about the meaning of "occurred" in Wis. Stat. § 88.87(2)(c) during construction and how that term is interpreted when continued damage is alleged to have been caused by DOT's on-going maintenance of 120th Avenue.

¶77  It is not possible to decide the legal questions of statutory interpretation before deciding the factual questions about which types of actions by DOT caused damage to Southport.  Therefore, DOT's affirmative defense cannot be determined solely by review of the pleadings.  Accordingly, DOT did not carry its burden as proponent of the affirmative defense and its motion should have been denied.

### III.  CONCLUSION

¶78  This is not a case that can be decided on the pleadings.  I write in dissent because basic rules of civil procedure that control when judgment on the pleadings may be granted have been disregarded by three courts.  In addition, the majority opinion creates a new element for an inverse condemnation claim and converts an affirmative defense into a pleading requirement for Southport.  When this court disregards basic rules of civil procedure, changes pleading rules and

13

overrules precedent of this court without so much as a by-your-leave in order to obtain the outcome it prefers, it causes confusion throughout the court system that goes far beyond Southport's claim for inverse condemnation. Accordingly, I respectfully dissent.

¶79 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice REBECCA GRASSL BRADLEY join this dissent.