**2025 WI 4**

# Supreme Court of Wisconsin



WISCONSIN ELECTIONS COMMISSION, et al.,
*Plaintiffs-Respondents,*

*v.*

DEVIN LEMAHIEU, et al.,
*Defendants-Appellants.*

No. 2024AP351
Decided February 7, 2025

APPEAL from a judgment and order of the Dane County Circuit Court (Ann M. Peacock, J.) No. 2023CV2428

ZIEGLER, C.J., delivered the majority opinion for a unanimous Court. ANN WALSH BRADLEY, J., filed a concurring opinion, in which DALLET and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which ZIEGLER, C.J., joined.

¶1 ANNETTE KINGSLAND ZIEGLER, C.J. This case is before the court on bypass pursuant to WIS. STAT. § (Rule) 809.60 (2021–22).[1] We review an order of the Dane County circuit court, granting the Wisconsin Elections Commission ("WEC") and Meagan Wolfe's motion for judgment on the pleadings and denying Devin LeMahieu, Robin Vos, and Chris Kapenga's ("the legislators") motion for judgment on the pleadings.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2021–22 version unless otherwise indicated.

¶2      The legislators seek mandamus and declaratory judgment relief, alleging that WEC has a duty to appoint a new administrator. The legislators argue that Wolfe's term as the administrator of WEC expired on July 1, 2023, and that WEC needs to appoint a new administrator. The legislators' argument hinges on their interpretation of Wis. Stat. § 15.61(1)(b)1., which provides that WEC "shall be under the direction and supervision of an administrator, who shall be appointed by a majority of the members of [WEC], with the advice and consent of the senate, to serve for a 4-year term expiring on July 1 of the odd-numbered year." The circuit court disagreed and granted WEC's motion for judgment on the pleadings and denied the legislators' motion for judgment on the pleadings, reasoning that § 15.61(1)(b)1. does not place a duty on WEC to appoint a new administrator when the current administrator's term expires. Instead, WEC has a duty to appoint a new administrator only when a vacancy in the position occurs.

¶3      We affirm the decision of the circuit court in part and remand for further proceedings.[2] Wisconsin Stat. § 15.61(1)(b)1. specifies who will appoint an administrator: WEC. It also details how WEC appoints an administrator. An administrator must be appointed by a majority vote of the members of WEC, and the senate must confirm the appointment. Section 15.61(1)(b)1. imposes a duty on WEC to appoint a new administrator only "[i]f a vacancy occurs in the administrator position[.]" No vacancy in the position exists. *State ex rel. Kaul v. Prehn*, 2022 WI 50, 402 Wis. 2d 539, 976 N.W.2d 821; Wis. Stat. § 17.03. Consequently, under § 15.61(1)(b)1., WEC does not have a duty to appoint a new administrator to replace Wolfe simply because her term has ended.

## I.  BACKGROUND

¶4      Created in 2016,[3] WEC possesses a number of powers and duties over the administration of elections in Wisconsin. "Among them, [WEC] has general responsibility for administering chapters five through

---

[2] At oral argument, WEC's counsel averred that WEC does not seek to continue the permanent injunction entered by the circuit court. *See infra* ¶9. Accordingly, we direct the circuit court to vacate the injunction upon remand.

[3] *See* 2015 Wis. Act 118.

ten and 12, the power to investigate and prosecute violations of election laws, the duty and power to issue guidance and formal advisory opinions, and the charge to conduct voter education programs." *State ex rel. Zignego v. WEC*, 2021 WI 32, ¶18, 396 Wis. 2d 391, 957 N.W.2d 208 (citing Wis. Stat. § 5.05(1), (2m), (2w), (5t), (6a), (12)). Under Wisconsin law, the administrator of WEC "serve[s] as the chief election officer of this state." § 5.05(3g). She "perform[s] such duties as [WEC] assigns to . . . her in the administration of [chapters five through ten] and 12." § 5.05(3d). WEC must appoint an administrator "in the manner provided" by Wis. Stat. § 15.61(1)(b). § 5.05(3d). Per § 15.61(1)(b)1., the administrator must be "appointed by a majority of the members of [WEC]" and confirmed by the senate.

¶5 On May 15, 2019, the senate confirmed the appointment of Wolfe as the administrator of WEC. Her term expired on July 1, 2023, per Wis. Stat. § 15.61(1)(b)1., which provides that the administrator "serve[s] for a 4-year term expiring on July 1 of the odd-numbered year." Although Wolfe's term as the administrator expired, WEC has not appointed a replacement.

¶6 On June 27, 2023, three members of WEC voted to appoint Wolfe to serve an additional four-year term as the administrator of WEC. But the three remaining members of WEC abstained.[4] Under Wis. Stat. § 15.61(1)(b)1., an administrator must "be appointed by a majority of the members of [WEC.]" Because Wolfe failed to receive four members' votes, she was not appointed to serve another four-year term.

¶7 On September 14, 2023, the senate held a vote. WEC contends the senate voted to reject an appointment of Wolfe for another term as administrator. The legislators, however, characterize the vote as

---

[4] The abstaining commissioners posited that WEC does not have the authority to appoint a new administrator without a vacancy in the position. WEC did not advance this interpretation of Wis. Stat. § 15.61(1)(b)1. in the circuit court. WEC confirmed during oral argument that it does not do so before this court. In any case, the abstaining commissioners were incorrect. After an administrator's term has ended, WEC may appoint a new administrator, with the advice and consent of the senate, without first removing the holdover under § 15.61(1)(b)2. and creating a vacancy in the position. *See infra* ¶23.

"symbolic" and "a vote of no confidence."[5] On the same day, WEC filed a complaint in the circuit court, seeking injunctive and declaratory relief. WEC filed suit against LeMahieu, in his official capacity as the majority leader of the senate; Vos, in his official capacity as a co-chair of the Joint Committee on Legislative Organization ("JCLO"); and Kapenga, in his official capacity as a co-chair of the JCLO. WEC sought a declaration that (1) Wolfe is lawfully holding over as the administrator of WEC, meaning there is no vacancy in the position; (2) WEC's June 27, 2023 vote did not appoint Wolfe to serve an additional term; (3) the senate cannot reject an appointment when there is no appointment pending, so its September 14, 2023 vote had no legal effect; (4) WEC has a duty to appoint a new administrator only if there is a vacancy in the office of the administrator; and (5) the JCLO does not have the authority to appoint an interim administrator unless there is a vacancy in the administrator position.[6]

¶8    In their answer, the legislators conceded that (1) Wolfe is lawfully holding over as the administrator of WEC; (2) WEC's June 27, 2023 vote did not appoint Wolfe to serve an additional term; (3) the senate cannot reject an appointment when there is no appointment pending; and (4) the JCLO cannot appoint an interim administrator absent a vacancy. But the legislators contended that WIS. STAT. § 15.61(1)(b)1. imposes a duty on WEC to appoint a new administrator at the end of an administrator's term—regardless of whether a vacancy in the position exists. The legislators asserted a counterclaim against WEC and Wolfe, requesting declaratory judgment that WEC has a duty to appoint a new administrator and a writ of mandamus compelling WEC to do so. The legislators then filed a motion to dismiss on all claims made by WEC,

---

[5] Whether the senate's vote was symbolic and a vote of no confidence or a rejection of an appointment of Wolfe to serve another term as administrator is not pertinent to the resolution of this case.

[6] *See* WIS. STAT. § 15.61(1)(b)1. ("If a vacancy occurs in the administrator position, [WEC] shall appoint a new administrator, and submit the appointment for senate confirmation, no later than 45 days after the date of the vacancy. If [WEC] has not appointed a new administrator at the end of the 45-day period, the [JCLO] shall appoint an interim administrator to serve until a new administrator has been confirmed by the senate but for a term of no longer than one year.").

except for whether WEC has a duty to appoint a new administrator to replace Wolfe because her term expired.

¶9    Both WEC and the legislators filed motions for judgment on the pleadings with the circuit court. The circuit court granted WEC's motion and denied the legislators' motion, dismissing their counterclaim and motion to dismiss. The court granted declaratory judgment on each of the five claims raised by WEC. As to the fourth claim—whether WEC has a duty to appoint an administrator even if there is not a vacancy in the position—the circuit court concluded that "[t]he plain text of [WIS. STAT.] § 15.61(1)(b)1[.] provides that [] WEC 'shall appoint a new administrator' if a vacancy occurs[,]" not simply when an administrator's term expires. Accordingly, the circuit court denied the legislators' petition for a writ of mandamus, concluding that WEC does not have a "positive and plain duty to appoint an administrator when its administrator lawfully holds over." In addition to entering declaratory judgment for WEC, the court entered a permanent injunction against the legislators, "enjoin[ing] the [legislators] from taking any official action contrary to [the circuit court's] declarations."

¶10    The legislators appealed. WEC then filed a petition to bypass the court of appeals with this court, which we granted on September 11, 2024.

## II.  STANDARD OF REVIEW

¶11    We must review the circuit court's decision to grant WEC's motion for judgment on the pleadings and deny the legislators' motion for judgment on the pleadings. Whether a party is entitled to judgment on the pleadings is a question of law we review de novo. *See Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citing *Hocking v. City of Dodgeville*, 2009 WI 70, ¶7, 318 Wis. 2d 681, 768 N.W.2d 552); *Schuster v. Altenberg*, 144 Wis. 2d 223, 228, 424 N.W.2d 159 (1988). In reviewing an order granting or denying judgment on the pleadings, this court uses the same standards for reviewing summary judgment. *Schuster*, 144 Wis. 2d at 228; WIS. STAT. § 802.06(3). Therefore, judgment on the pleadings "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law."[7] *Schmidt v. N. States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294 (citing *Linville v. City of Janesville*, 184 Wis. 2d 705, 714, 516 N.W.2d 427 (1994)); *Southport Commons, LLC v. DOT*, 2021 WI 52, ¶18, 397 Wis. 2d 362, 960 N.W.2d 17 (citing *McNally v. Capital Cartage, Inc.*, 2018 WI 46, ¶23, 381 Wis. 2d 349, 912 N.W.2d 35); Wis. Stat. § 802.08(2).

¶12    This case requires this court to determine whether the circuit court erroneously denied a writ of mandamus. This court reviews the decision to grant or deny a writ of mandamus under the erroneous exercise of discretion standard. *Miller v. Smith*, 100 Wis. 2d 609, 621, 302 N.W.2d 468 (1981). The circuit court erroneously exercises its discretion when it grants or denies a writ of mandamus based on an incorrect interpretation of the law. *State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 106, 255 N.W.2d 449 (1977) (citing *State v. Hutnik*, 39 Wis. 2d 754, 159 N.W.2d 733 (1968)).

¶13    The meaning of a statute is a question of law reviewed de novo. *Waity v. LeMahieu*, 2022 WI 6, ¶18, 400 Wis. 2d 356, 969 N.W.2d 263

---

[7] We question whether the circuit court properly treated the parties' motions as motions for judgment on the pleadings. After the parties filed their motions for judgment on the pleadings, WEC filed an affidavit with the circuit court presenting to the court a statement made by one of the legislators, which was not mentioned in any of the pleadings. The circuit court referred to the material contained in the affidavit in its order granting WEC's motion and denying the legislators' motion. Wisconsin Stat. § 802.06(3) provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Courts have explained that "[a] judgment on the pleadings is essentially a summary judgment minus affidavits and other supporting documents." *Com. Mortg. & Fin. Co. v. Clerk of the Cir. Ct.*, 2004 WI App 204, ¶10, 276 Wis. 2d 846, 689 N.W.2d 74; *Schuster v. Altenberg*, 144 Wis. 2d 223, 228, 424 N.W.2d 159 (1988) (quoting Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure Chapters 801–803*, 59 Marq. L. Rev. 1, 55–56 (1976)). Before this court, the parties do not address whether the circuit court should have treated the parties' motions for judgment on the pleadings as motions for summary judgment. We, therefore, do not decide whether the circuit court ought to have treated the parties' motions for judgment on the pleadings as motions for summary judgment.

(quoting *Estate of Miller v. Storey*, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759). "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (internal citations omitted) (quoting *Seider v. O'Connell*, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46 (citations omitted). Additionally, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.* (citations omitted). A statute's "scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *Id.*, ¶48.

## III.  ANALYSIS

¶14    As before the circuit court, the parties agree on the following. Wolfe is lawfully holding over as the administrator of WEC. There is no vacancy in the administrator position. *Prehn*, 402 Wis. 2d 539; WIS. STAT. § 17.03. WEC's June 27, 2023 vote did not appoint Wolfe to serve an additional term because only three commissioners voted to appoint Wolf for a second term. *See* WIS. STAT. § 15.61(1)(b)1. Prior to WEC making an appointment, the senate cannot reject an appointment. *See* § 15.61(1)(b)1. Therefore, the senate's September 14, 2023 vote had no legal effect. And the JCLO does not have the authority to appoint an interim administrator absent a vacancy. *See* § 15.61(1)(b)1.

¶15    Before this court, the legislators argue that WIS. STAT. § 15.61(1)(b)1. places a duty on WEC to appoint a new administrator to replace Wolfe because her term ended on July 1, 2023, and that the circuit court erred by denying a writ of mandamus compelling WEC to appoint a new administrator. We disagree. Section 15.61(1)(b)1. does not impose a duty on WEC to appoint a new administrator unless a vacancy in the position exists, and the circuit court did not err by denying a writ of mandamus.

¶16     This case centers on the proper interpretation of Wis. Stat. § 15.61(1)(b)1. Section 15.61(1)(b) provides in full:

> 1. [WEC] shall be under the direction and supervision of an administrator, who shall be appointed by a majority of the members of [WEC], with the advice and consent of the senate, to serve for a 4-year term expiring on July 1 of the odd-numbered year. Until the senate has confirmed an appointment made under this subdivision, [WEC] shall be under the direction and supervision of an interim administrator selected by a majority of the members of [WEC]. If a vacancy occurs in the administrator position, [WEC] shall appoint a new administrator, and submit the appointment for senate confirmation, no later than 45 days after the date of the vacancy. If [WEC] has not appointed a new administrator at the end of the 45-day period, the [JCLO] shall appoint an interim administrator to serve until a new administrator has been confirmed by the senate but for a term of no longer than one year. If the administrator position remains vacant at the end of the one-year period, the process for filling the vacancy described in this subdivision is repeated until the vacancy is filled.

> 2. The administrator may be removed by the affirmative vote of a majority of all members of [WEC] voting at a meeting of [WEC] called for that purpose.

¶17     The legislators contend that Wis. Stat. § 15.61(1)(b)1.'s first sentence places a duty on WEC to appoint a new administrator to replace Wolfe because her term has expired, even though there is no vacancy in the position. Specifically, the legislators point this court to the statutory phrase "who shall be appointed by a majority of the members of [WEC] . . . to serve for a 4-year term expiring on July 1 of the odd-numbered year." The legislators' main argument is that the use of the word "shall"—as opposed to the permissive, discretion-creating word "may"—creates a duty on the part of WEC. We reject this argument.

¶18     To be sure, this court presumes that the use of the word "shall" in a statute creates a duty. *See, e.g., State v. Fitzgerald*, 2019 WI 69, ¶25 n.8, 387 Wis. 2d 384, 929 N.W.2d 165 ("'Shall' is 'presumed mandatory.'" (quoting *State ex rel. DNR v. Wis. Ct. of App., Dist. IV*, 2018 WI 25, ¶13 n.7, 380 Wis. 2d 354, 909 N.W.2d 114)); Antonin Scalia &

Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion."); 3 Shambie Singer, Sutherland Statutory Construction § 57:10 (8th ed. 2020) ("The word 'shall' ordinarily imposes an imperative duty."). But the use of the word does not always create a duty. *See generally* Bryan A. Garner, Garner's Dictionary of Legal Usage 952–53 (3d ed. 2011) (discussing various uses of the term); *shall*, Black's Law Dictionary 1657 (12th ed. 2024) (same). A presumption is, after all, only a presumption—not an ironclad rule. "A term such as 'shall' or 'may' does not have an exclusive, fixed, or inviolate connotation, and its meaning in particular cases is determined from . . . the context within which the word appears." Singer, *supra*, § 57:10; *State v. Ziegler*, 2012 WI 73, ¶43, 342 Wis. 2d 256, 816 N.W.2d 238 ("[A]scertaining the plain meaning of a statute requires more than focusing on a single sentence or portion thereof." (citing *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶12, 293 Wis. 2d 123, 717 N.W.2d 258)). For example, per Wis. Stat. § 15.61(1)(b)1., WEC "shall be under the direction and supervision of an administrator[.]" The word "shall" in this sentence cannot plausibly be understood to place a duty on an unnamed person or entity to ensure that an administrator directs and supervises WEC.

¶19 Read naturally and in context, the first sentence of Wis. Stat. § 15.61(1)(b)1. does not impose a duty on WEC to appoint a new administrator when the current administrator's term ends. Instead, the first sentence designates *who* has the authority to appoint an administrator and provides *how* an administrator is properly appointed. *See Pasko v. City of Milwaukee*, 2002 WI 33, ¶26, 252 Wis. 2d 1, 643 N.W.2d 72.[8] Who appoints the administrator? It must be WEC. § 15.61(1)(b)1. (the "administrator[] [] shall be appointed by . . . [WEC]"). No other person or entity is authorized to appoint an administrator under the statute. How is one appointed administrator of WEC? One may be appointed the administrator only if "a majority of the members of [WEC]" vote to appoint the person and that person is confirmed by the senate.[9] § 15.61(1)(b)1.

---

[8] *See also* Wis. Stat. § 5.05(3d) ("[WEC] shall appoint an administrator in the manner provided under [Wis. Stat. §] 15.61(1)(b).").

[9] A different process applies for the appointment of an interim administrator. *See* Wis. Stat. § 15.61(1)(b)1.

¶20    This conclusion is reinforced by the third and fourth sentences of Wis. Stat. § 15.61(1)(b)1. Section 15.61(1)(b)1.'s third sentence provides that "[i]f a vacancy occurs in the administrator position, [WEC] shall appoint a new administrator, and submit the appointment for senate confirmation, no later than 45 days after the date of the vacancy." This sentence clearly places a duty on WEC to appoint a new administrator. It enumerates the condition giving rise to the duty—when "a vacancy occurs in the administrator position"—and creates a deadline by which the duty must be fulfilled—"no later than 45 days after the date of the vacancy." § 15.61(1)(b)1. The fourth sentence of § 15.61(1)(b)1. then creates a consequence for when WEC fails to follow through on its duty to appoint when a vacancy occurs. If WEC fails to "appoint[] a new administrator at the end of the 45-day period," the JCLO "appoint[s] an interim administrator to serve until a new administrator has been confirmed by the senate but for a term of no longer than one year." § 15.61(1)(b)1.

¶21    The third and fourth sentences of Wis. Stat. § 15.61(1)(b)1. are significant. They demonstrate that the legislature knows how to create a duty to appoint when it wishes to do so. *See Andruss v. Divine Savior Healthcare Inc.*, 2022 WI 27, ¶37, 401 Wis. 2d 368, 973 N.W.2d 435 (reasoning that the legislature's choice to consider corporate affiliation for one type of healthcare provider under statute demonstrated legislature's "ability to [do so]"; its decision not to do so for other healthcare providers indicated corporate affiliation was not to be considered); *State v. Yakich*, 2022 WI 8, ¶24, 400 Wis. 2d 549, 970 N.W.2d 12 (explaining that the legislature "plainly demonstrated the ability" to establish a different standard and "declined to do so"); *United Am., LLC v. DOT*, 2021 WI 44, ¶¶15–16, 397 Wis. 2d 42, 959 N.W.2d 317 (comparing the text of two statutory provisions and noting that the "legislature knows how" to write different statutory language). These sentences supply the condition triggering the duty, the deadline by which the duty must be accomplished, and the consequence for failing to comply with the duty. In light of § 15.61(1)(b)1.'s clear command that WEC has a duty to appoint a new administrator in the event of a vacancy, we decline to read a duty to appoint a new administrator at the expiration of an administrator's term into the first sentence.

¶22    In opposing this conclusion, the legislators argue the language in Wis. Stat. § 15.61(1)(b)1. that establishes the administrator "serve[s] for a 4-year term expiring on July 1 of the odd-numbered year" is rendered surplusage if WEC does not have a duty to appoint a new

administrator when an administrator's term expires. *See State v. Lira*, 2021 WI 81, ¶38, 399 Wis. 2d 419, 966 N.W.2d 605 (stating "courts should strive to 'avoid surplusage'" (quoting *Kalal*, 271 Wis. 2d 633, ¶46)). The legislators contend that even if this language is interpreted to give WEC the authority to appoint a new administrator after the current administrator's term ends, there is still surplusage because § 15.61(1)(b)2. allows WEC to remove the current administrator at any time. The legislators are mistaken.

¶23 This court's interpretation of the statute creates no surplusage. The language providing that an administrator "serve[s] for a 4-year term" that "expir[es] on July 1 of the odd-numbered year" allows WEC to appoint a new administrator who, if confirmed by the senate, would replace Wolfe. *See Prehn*, 402 Wis. 2d 539, ¶29 ("Without the expiration of Prehn's term, the Governor would not have the ability to appoint a replacement to complete a successive term.").[10] Additionally, the expiration of the term permits WEC to do so without first calling a meeting to specifically remove Wolfe and creating a vacancy. WIS. STAT. §§ 15.61(1)(b)2. (providing that "[t]he administrator may be removed by the affirmative vote of a majority of all members of [WEC] voting at a meeting of [WEC] called for that purpose"), 17.03(3) (providing that a public office becomes vacant when "[t]he incumbent is removed"). Accordingly, the language setting forth the length of an administrator's term is not relegated to having "no substantive effect." SCALIA & GARNER, *supra*, at 178.

¶24 Next, the legislators argue that the bipartisan design of WEC will be thwarted if WEC does not have a duty to appoint a new administrator when an administrator's term expires. *See C. Coakley Relocation Sys., Inc. v. City of Milwaukee*, 2008 WI 68, ¶17, 310 Wis. 2d 456, 750 N.W.2d 900 ("Context and structure of a statute are important to the meaning of the statute." (citation omitted)); *State v. Jensen*, 2010 WI 38, ¶15, 324 Wis. 2d 586, 782 N.W.2d 415 ("In construing a statute, we favor a construction that fulfills the purpose of the statute over one that defeats that purpose." (citing *County of Dane v. LIRC*, 2009 WI 9, ¶34, 315

---

[10] *See also State ex rel. Thompson v. Gibson*, 22 Wis. 2d 275, 293, 125 N.W.2d 636 (1964); *State ex rel. Martin v. Heil*, 242 Wis. 41, 48–49, 7 N.W.2d 375 (1942).

Wis. 2d 293, 759 N.W.2d 571)). The legislators warn that "a partisan minority of WEC could keep a holdover [a]dministrator in place indefinitely," which they assert conflicts with the design of WEC as a bipartisan institution.

¶25 The legislators point this court to WIS. STAT. § 15.61(1)(a)—the statute that creates WEC and outlines its structure. § 15.61(1)(a) ("There is created an elections commission consisting of the following members who shall serve for 5-year terms[.]"). The legislators argue that it is clear from the text of § 15.61(1)(a) that WEC is designed to be a bipartisan institution. WEC typically has six members.[11] Section 15.61(1)(a) provides that one member of WEC will be appointed by the senate majority leader, and another will be appointed by the senate minority leader. § 15.61(1)(a)1.–2. Similarly, one member will be appointed by the speaker of the assembly, and another will be appointed by the assembly minority leader. § 15.61(1)(a)3.–4. Finally, two members are nominated by the governor, with the advice and consent of the senate, from two lists created by "[t]he legislative leadership of the [two] major political parties that received the largest number of votes for president." § 15.61(1)(a)5. The legislators summarize this scheme as "mandat[ing] that Wisconsin's '[two] major political parties' each control three [c]ommissioner appointments." Additionally, the legislators posit that the bipartisan design of WEC is evidenced by the fact that the administrator must be appointed by a majority of WEC's commissioners and confirmed by the senate. § 15.61(1)(b)1.[12]

¶26 But even if the legislators' premise that WIS. STAT. § 15.61(1)(a) structures WEC as a bipartisan institution is correct, the legislators' conclusion that our interpretation of § 15.61(1)(b)1. subverts that purpose does not follow. Under our interpretation of the statute, WEC does not have a duty to appoint a new administrator when an administrator's term expires. But bipartisan agreement among the

---

[11] *See* WIS. STAT. § 15.61(1)(a)6. (allowing third parties to create a list of persons from which the governor will chose a member of WEC provided statutory conditions are met).

[12] *See also* WIS. STAT. § 5.05(1e) ("Any action by [WEC], except an action relating to procedure of [WEC], requires the affirmative vote of at least two-thirds of the members.").

commissioners is still required to replace a holdover administrator. § 15.61(1)(b)1. (requiring an administrator to be appointed "by a majority of the members of [WEC]"), (1)(b)2. (allowing WEC to remove an administrator "by the affirmative vote of a majority of all members of [WEC]" even before the expiration of an administrator's term). If bipartisan agreement cannot be found, the status quo continues: The holdover administrator—Wolfe, in this case—will remain in her position.[13] This result is fully compatible with a bipartisan design. Accordingly, we reject the legislators' argument based on the statute's alleged purpose and design.

¶27 Finally, the legislators argue that WEC's failure to appoint a new administrator after Wolfe's term expired violates the separation of powers. But the legislators do not advance a traditional separation-of-powers argument based on the Wisconsin Constitution's text and structure. *See Serv. Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶31, 393 Wis. 2d 38, 946 N.W.2d 35 (explaining that the constitutional separation of powers flows, in part, from the constitution's vesting clauses); *Koschkee v. Taylor*, 2019 WI 76, ¶¶10–11, 387 Wis. 2d 552, 929 N.W.2d 600 (same). Instead, the legislators contend that WEC is violating the separation of powers embedded in the text of WIS. STAT. § 15.61(1)(b)1. by failing to appoint a new administrator that the senate may approve of or reject, utilizing its statutory power of advice and consent. As the legislators explain in their brief, "[b]y refusing to make an appointment as required by [§] 15.61(1)(b)1[.], WEC is subverting [a] legislative mandate. . . . [T]he [e]xecutive is flouting a duly enacted statute intended to impose a legislative check on executive action."

¶28 As indicated by the quotation above, the legislators' separation-of-powers argument relies on the conclusion that WEC has a duty to appoint a new administrator when an administrator's term expires. Because this court rejects that WEC has a duty to appoint a new administrator absent a vacancy in the position, the legislators' argument necessarily fails. *See supra* ¶¶18–26. Indeed, counsel for the legislators conceded at oral argument that their separation-of-powers argument is not independent from their argument that the statute imposes a

---

[13] That is, unless a vacancy is otherwise created under WIS. STAT. § 17.03.

mandatory duty on WEC to appoint an administrator to replace Wolfe.[14] Consequently, we reject the legislators' statutory separation-of-powers argument.

¶29 We now turn to the circuit court's decision to deny a writ of mandamus. "Mandamus is an extraordinary writ issued in the discretion of the circuit court to compel compliance with a plain legal duty." *Mount Horeb Cmty. Alert v. Vill. Bd. of Mt. Horeb*, 2003 WI 100, ¶9, 263 Wis. 2d 544, 665 N.W.2d 229 (citing *Althouse*, 79 Wis. 2d at 105–06); *Pasko*, 252 Wis. 2d 1, ¶24 (citation omitted). There are four requirements that must be met before a court may issue a writ of mandamus: "(1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law." *L. Enf't Standards Bd. v. Vill. of Lyndon Station*, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981).

¶30 The circuit court did not err by denying a writ of mandamus. As detailed above, WIS. STAT. § 15.61(1)(b)1. does not require WEC to appoint a new administrator after an administrator's term has expired absent a vacancy in the position. WEC may appoint a new administrator to replace Wolfe, but WEC does not need to do so. *See* § 15.61(1)(b)1.; *Prehn*, 402 Wis. 2d 539, ¶29. Accordingly, WEC has not violated a positive and plain duty by failing to appoint a replacement for Wolfe.[15] *See Pasko*, 252 Wis. 2d 1, ¶26; *Althouse*, 79 Wis. 2d at 106. Because we conclude that

---

[14] At oral argument, the court and the legislators' counsel had the following colloquy:

> Court: If this court disagree[s] with your interpretation of the statute, there isn't an alternative argument you're making to sustain your position, is that correct?

> Counsel: That's correct, your honor.

[15] In light of the conclusion that WEC does not have a positive and plain duty to appoint a new administrator when an administrator's term expires, this court does not decide whether the legislators fulfilled the remaining requirements for a writ of mandamus. *See Md. Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed." (citing *Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938))).

WEC has not violated a positive and plain duty, the circuit court did not err in denying a writ of mandamus.

## IV. CONCLUSION

¶31    We affirm the decision of the circuit court in part and remand for further proceedings. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 15.61(1)(b)1. specifies who will appoint an administrator: WEC. It also details how WEC appoints an administrator. An administrator must be appointed by a majority vote of the members of WEC, and the senate must confirm the appointment. Section 15.61(1)(b)1. imposes a duty on WEC to appoint a new administrator only "[i]f a vacancy occurs in the administrator position[.]" No vacancy in the position exists. *Prehn*, 402 Wis. 2d 539; Wɪs. Sᴛᴀᴛ. § 17.03. Consequently, under § 15.61(1)(b)1., WEC does not have a duty to appoint a new administrator to replace Wolfe simply because her term has ended.

*By the Court.*—The judgment and order of the circuit court are affirmed in part, and the cause is remanded to the circuit court.

ANN WALSH BRADLEY, J., with whom REBECCA FRANK DALLET AND JILL J. KAROFSKY, JJ., join, concurring.

¶32 I join the majority opinion in full. Under the current state of our case law, its analysis is complete and correct. However, I write separately to comment on the majority opinion's reliance on *State ex rel. Kaul v. Prehn*, 2022 WI 50, 402 Wis. 2d 539, 976 N.W.2d 821. I disagreed with the *Prehn* decision when it was made, and I disagree with it today.[1] I write to clarify that the majority opinion's reliance should not be taken as an endorsement of the *Prehn* court's reasoning. Accordingly, I respectfully concur.

¶33 In the present case, we apply *Prehn* to arrive at the premise that no vacancy in the administrator position exists. Majority op., ¶¶3, 14, 31. Indeed, LeMahieu concedes, pursuant to *Prehn*, that Wolfe is lawfully holding over and that there is no vacancy. *Id.*, ¶14; *see* WIS. STAT. § 17.03.

¶34 No party here asked us to overrule or otherwise modify *Prehn*. Driving this point home, at oral argument counsel for both WEC and LeMahieu confirmed that they were not seeking to revisit *Prehn*. Because both parties made abundantly clear that neither was requesting that *Prehn* be revisited in this case, the issue was not presented. Consequently, we do not address it here. *See State v. Fermanich*, 2023 WI 48, ¶15 n.5, 407 Wis. 2d 693, 991 N.W.2d 340 (declining to overrule prior case law where no party made such a request); *St. Augustine Sch. v. Taylor*, 2021 WI 70, ¶37, 398 Wis. 2d 92, 961 N.W.2d 635 (same); *see also Bartlett v. Evers*, 2020 WI 68, ¶123, 393 Wis. 2d 172, 945 N.W.2d 685 (Ann Walsh Bradley, J., concurring in part, dissenting in part) ("Deciding a case based on a theory not argued by any party not only blindsides the parties and sidesteps their input, but it also too often results in an inadequate guidance and ill-conceived legal analysis.").

¶35 In *Prehn*, the court addressed whether the expiration of Frederick Prehn's term on the Natural Resources Board created a vacancy such that the governor could appoint a provisional replacement, despite Prehn's desire to remain as a holdover. The majority concluded that "[u]nder WIS. STAT. § 17.03, the expiration of Prehn's term on the DNR

---

[1] *State ex rel. Kaul v. Prehn*, 2022 WI 50, ¶¶57-82, 402 Wis. 2d 539, 976 N.W.2d 821 (Dallet, J., dissenting, joined by Ann Walsh Bradley & Karofsky, JJ.).

Board does not create a vacancy."  402 Wis. 2d 539, ¶3.  I need not conduct a deep dive into the shortcomings of the reasoning that led to this conclusion.  As Justice Dallet aptly observed, we are not to interpret statutes so as to render absurd results.  *Id.*, ¶79 (Dallet, J., dissenting).  She capably explained in her dissent the majority opinion's infirm foundation.  Suffice it to say that the "majority's absurd holding allows Prehn's six-year term on the Board of Natural Resources—which expired over a year ago—to last for as long as Prehn wants it to, so long as he refuses to leave and the senate doesn't confirm a successor nominated by the governor."  *Id.*, ¶58 (Dallet, J., dissenting).

¶36  In a circumstance where the parties have presented the issue, it may behoove us to give *Prehn* a second look.  *See Tavern League of Wisconsin, Inc. v. Palm*, 2021 WI 33, ¶38, 396 Wis. 2d 434, 957 N.W.2d 261 (Hagedorn, J., concurring) (indicating that under "different circumstances" it may be necessary to reconsider a past case but declining to do so where the parties have not sought such a reconsideration).  As explained in Justice Dallet's dissent in *Prehn*, that case rests on shaky ground.  The charge of this court is to interpret our statutes with a long view, encouraging stability and the functioning of government in a way that makes sense.  At the very least, we should question an interpretation that perpetuates "disorder and chaos."  *Prehn*, 402 Wis. 2d 539, ¶58 (Dallet, J., dissenting).

¶37  For the reasons stated, I respectfully concur.

Rebecca Grassl Bradley, J., with whom Annette Kingsland Ziegler, C.J., joins, concurring.

¶38    "The courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body." The Federalist No. 78, at 526 (Alexander Hamilton) (J. Cooke ed., 1961).

¶39    Less than three years ago, this court correctly concluded the expiration of Wisconsin Department of Natural Resources ("DNR") board member Frederick Prehn's six-year term did not create a vacancy and he lawfully retained his position as a holdover. *State ex rel. Kaul v. Prehn*, 2022 WI 50, 402 Wis. 2d 539, 976 N.W.2d 821. In this case—relying on *Prehn*—the parties agree the expiration of Wisconsin Elections Commission ("WEC") Administrator Meagan Wolfe's four-year term did not create a vacancy and Wolfe is serving as a lawful holdover. Applying *Prehn*, the court unanimously concludes, "WEC does not have a duty to appoint a new administrator to replace Wolfe simply because her term has ended" since "[n]o vacancy in the position exists." Majority op., ¶31.

¶40    Three members of the majority in this case dissented in *Prehn*, deeming its holding "absurd," "nonsensical," and based on a "misguided reading" of the law. *Prehn*, 402 Wis. 2d 539, ¶58 (Dallet, J., dissenting, joined by Ann Walsh Bradley and Karofsky, JJ.). The dissenters claimed the court's decision "steers our state's government directly into disorder and chaos, threatening the fragile separation of powers central to its functions." *Id.* The dissenters lamented "the absurd result that Prehn's expired six-year term has somehow transformed into life tenure" for Prehn. *Id.*, ¶79. Despite these vociferous criticisms, the *Prehn* dissenters nevertheless apply the same principles in this case, resulting in Wolfe continuing to serve in her position indefinitely, notwithstanding the expiration of her term. Majority op., ¶14.

¶41    Have the *Prehn* dissenters changed their minds or developed respect for the doctrine of stare decisis? Not likely. Although they join the majority opinion, Justice Ann Walsh Bradley, joined by Justices Rebecca Frank Dallet and Jill J. Karofsky double down on their disdain for *Prehn*, attempting to rewrite the majority opinion in this case to their liking by "clarify[ing] that the majority opinion's reliance should not be taken as an endorsement of the *Prehn* court's reasoning." Justice Ann Walsh Bradley's concurrence, ¶32. Yes, it should, because the majority opinion rightly

relies upon *Prehn*, as did the parties. *Prehn* expounds the principles the rest of the majority (Chief Justice Annette Kingsland Ziegler and Justices Rebecca Grassl Bradley and Brian Hagedorn) consistently applied then and now. Indeed, Justice Ann Walsh Bradley acknowledges "we apply *Prehn* to arrive at the premise that no vacancy in the administrator position exists." *Id.*, ¶33. Nevertheless, Justice Ann Walsh Bradley attacks *Prehn* for its ostensible "shortcomings of the reasoning," its "render[ing of] absurd results," its "infirm foundation," its "shaky ground" and an "interpretation that perpetuates 'disorder and chaos.'" *Id.*, ¶¶35–36 (citations omitted). If that weren't enough to convey her contempt for *Prehn*, Justice Ann Walsh Bradley (and two additional justices) signal a willingness to "give *Prehn* a second look" but only if the parties present the issue. *Id.*, ¶36. If *Prehn* were as absurd or as dangerous as its dissenters profess, they would not wait for a party to advocate its overruling before stemming the "disorder and chaos" they insisted *Prehn* would produce. *Prehn*, 402 Wis. 2d 539, ¶58 (Dallet, J., dissenting).

¶42 None of the *Prehn* dissenters disclose a principled basis for dissenting in *Prehn* but joining the majority opinion in this case, suggesting that only preferred results produce such inconsistency. Governor Scott Walker had appointed Prehn. *Id.*, ¶5. In 2021, Governor Tony Evers sought to replace him, but the Republican-controlled Senate did not confirm his nominee. *Id.*, ¶6. Just like Wolfe's position, the expiration of Prehn's term did not create a vacancy and Prehn continued to occupy his post lawfully after his term ended. Nevertheless, the dissenters rallied behind Governor Evers' efforts to replace him. During oral arguments in this case, Justice Jill J. Karofsky, a *Prehn* dissenter, seemingly unironically speculated that the legislators' argument against Wolfe's tenure "has little to do with what the law actually says and far more to do with who is in the[] position[]."[1] Given the *Prehn* dissenters' grave concerns with the outcome in that case, one could infer the same motivation for their irreconcilable positions.

¶43 Perhaps for *Prehn*'s dissenting justices, the distinction between *Prehn* and this case is not actually rooted in the statutory language or principles of stare decisis. After all, the *Prehn* dissenters

---

[1] Oral argument at 19:55, Wisconsin Elections Commission v. Devin LeMahieu, https://wiseye.org/2024/11/18/wisconsin-supreme-court-wisconsin-elections-commission-v-devin-lemahieu/.

enthusiastically endorsed overruling a prior case contradicting their atextual analysis about holdover public officials. *See Prehn*, 402 Wis. 2d 539, ¶69 (Dallet, J., dissenting) (advocating we overrule *State ex rel. Thompson v. Gibson*, 22 Wis. 2d 275, 125 N.W.2d 636 (1964), another case in which the court concluded an office with a lawful holdover is not vacant). And the *Prehn* dissenters, joined by the court's newest justice, have had no qualms about overruling recent cases to accomplish their transparently political agenda.[2]

¶44 Those justices cannot have it both ways. If *Prehn*'s pronouncement that holdovers do not create vacancies is "nonsensical," then Wolfe holding over is too. If the rule of law is to govern, the resolution of each case should not depend upon the individual occupying the office. Advocates are free to switch sides from one case to the next as their clients' interests warrant, but justices are supposed to declare what the law is, regardless of the impact on their political benefactors or detractors. It appears the *Prehn* dissenters once again "succumb[] to the temptation of results at the expense of [their] own legitimacy." *Clarke v. WEC*, 2023 WI 79, ¶229, 410 Wis. 2d 1, 998 N.W.2d 370 (Rebecca Grassl Bradley, J., dissenting) (citing Robert H. Bork, The Tempting of America: The Political Seduction of the Law 2 (1990)).

¶45 "To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them." The Federalist No. 78, *supra*, at 529 (Alexander Hamilton). This case required the court to do what it did in *Prehn*: interpret the law as enacted and render a decision accordingly. Inconsistency suggests results-oriented decision making. Reserving the option to overrule *Prehn* (and by extension, this case too) confirms it.

---

[2] *See Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.2d 429 (overruling *Teigen v. WEC*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519); *Waukesha Cnty. v. M.A.C.*, 2024 WI 30, 412 Wis. 2d 462, 8 N.W.2d 365 (overruling *Waukesha Cnty. v. S.L.L.*, 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140); *Clarke v. WEC*, 2023 WI 79, 410 Wis. 2d 1, 998 N.W.2d 370 (overruling *Johnson v. WEC*, 2021 WI 87, 399 Wis. 2d 623, 967 N.W.2d 469; *Johnson v. WEC*, 2022 WI 14, 400 Wis. 2d 626, 971 N.W.2d 402; and *Johnson v. WEC*, 2022 WI 19, 401 Wis. 2d 198, 972 N.W.2d 559).